WOODWARD *v*. WOODWARD ET AL.

*Alimony—Finding and execution by foreign court—Action in Ohio to enforce—Comity—Section 1, Article IV, U. S. Constitution.*

In a proceeding in a foreign court to recover unpaid installments of alimony awarded to plaintiff in a former action for alimony in that court, the finding of such court that there is due and unpaid a specific sum of money, and an order by such court that an execution issue for such amount, may be made the basis of an action in this state under the comity clause of the United States Constitution.

(Decided May 12, 1921.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Joseph L. Meyer,* for plaintiff in error.
*Mr. C. M. Leslie* and *Mr. August A. Rendigs, Jr.,* for defendants in error.

VICKERY, J. This cause comes into this court on a petition in error to the common pleas court of Hamilton county, the purpose of which proceeding is to reverse a judgment rendered in the court below in favor of the defendants in error.

The questions involved are novel, interesting and important. The history of the litigation is something like the following:

Prior to 1918, plaintiff in error and defendant in error Blanche Woodward, were husband and wife, and are still, I think, so far as that is concerned. Prior to March, 1918, Blanche Woodward had brought an action in the superior court of Cook county, Illinois, asking for alimony against

her husband, Lindsey A. Woodward, setting up
various grounds allowable in such cases in the state
of Illinois, and in March, 1918, the court found for
the plaintiff, Blanche. Woodward, in that action,
and made an order at first allowing six dollars per
week, but shortly thereafter changed to $75 a month,
as alimony, without providing any fixed sum. The
record shows that Lindsey A. Woodward had paid
about five installments of this money thus ordered
to be paid by the court in Cook county, Illinois.
Shortly thereafter he removed from the state and
became a resident of Cincinnati, whereupon Mrs.
Woodward filed a petition or motion in the superior
court of Cook county, Illinois (presumably in the
suit in which the alimony decree was allowed), and
upon such petition or motion the court found that
there was then due defendant in error as alimony
the sum of $975, and the court ordered that an exe-
cution issue for said amount, whereupon an order
of execution was given to the sheriff, which was re-
turned *nulla bona*. Both the order and the execu-
tion and return thereon are a part of the record
in this case. Thereupon Mrs. Woodward filed a
petition in the common pleas court of Hamilton
county, Ohio, setting up the recovery of this ali-
mony order and the filing of the motion or petition
and the procuring of an order of execution from the
Illinois court in said action, alleging that only cer-
tain sums had been paid, and no more, and that
there was due thereon, $975, together with some
subsequent accrued payments of alimony. To this
petition a general demurrer was filed, and after a
hearing in the common pleas court this demurrer
was overruled, and the defendant, not desiring to
plead further, filed his petition in error in this

court to have the whole matter reviewed before this court, claiming that the trial court erred in overruling the demurrer. Thus the case is really heard in this court upon the demurrer to the petition.

One of the singular things in the trial of this lawsuit is that both sides rely practically upon the same cases, both in the state courts and the United States courts. They bring into discussion in the case Section 1, Article IV of the Constitution of the United States, which provides as follows:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may, by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

Section 905, Revised Statutes of the United States, being Section 1519, U. S. Comp. Stat., Section 1266, Barnes' Fed. Code, provides as follows:

"The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the Court annexed, if there be a seal, together with the certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

In passing, I will say that the records show that the United States statutes were complied with in seeking to establish the order of the court made in

the Illinois proceeding. The right of the plaintiff in the Hamilton county court to recover is challenged by the claim that the order made by the superior court of Cook county, Illinois, was not a judgment within the meaning of the so-called comity clause of the Constitution of the United States. Our work is simplified by the frank confession of counsel for Mrs. Woodward that if a continuing order for alimony had not taken or assumed the form of a judgment, they would not have the right to maintain the action in the Hamilton county court on this order for alimony made in the Illinois court.

The books seem to be full of authority for the doctrine that a continuing order "for alimony payable in installments, in a suit for alimony alone in one state will not support an action as on a final judgment for a fixed sum in another state." (Quoting from the syllabus of *Gilbert* v. *Gilbert,* 83 Ohio St., 265, where the question was considered by our supreme court in a case almost similar to the one at bar.) And counsel for Mrs. Woodward frankly concede that if the alimony order or decree in the Illinois court had stood as it stood prior to the proceedings had in that court in August, 1919, the plaintiff in the court below would have no standing in Ohio Courts to enforce such decree, as it would not come within the purview of the comity clause, so-called, of the Constitution of the United States, but it is claimed that the proceedings had in the Illinois court in August, 1919, put the amount of alimony that was then due in the form of a judgment, and that those proceedings put the matter in such shape as to bring it within the terms of the provision of the United States Constitution above referred to; in other words, that the finding of the

court resulting from the proceedings had in August was a judgment for all the intents and purposes within the meaning of the term "judgment."

What is a judgment, then? Black on Judgments (2 ed.), Section 1, says:

"As, in logic, judgment is an affirmation of a relation between a particular predicate and a particular subject, so, in law, it is the affirmation by the law of the legal consequences attending a proved or admitted state of facts. It is not, however, a mere assertion of the rules of law as applied to given conditions, nor of the legal relations of the persons concerned. It is always a declaration that a liability, recognized as within the jural sphere, does or does not exist."

In Section 4, the same author says:

"The first and most obvious consequence of a judgment is that it establishes an indisputable obligation and confers upon the successful party the right to issue execution or other process of the court for its enforcement. But this, it must be repeated, is not an integral part of the judgment. The judgment is merely the affirmation of a liability. The right to use the process of the court for its enforcement is a consequence which the law attaches to it."

It will be noted from this authority that one of the consequences attaching to a judgment is the right to issue an execution. I am not familiar with the practice in Illinois, but apparently they have a process there whereby an order providing for the payment of money at stated intervals, made by certain proceedings had, would ripen into a judgment, and if not a judgment very like unto a judgment, upon which an execution might issue.

In the case at bar, the Illinois court did order

that an execution issue, and execution was issued and returned unsatisfied, and it seems to us that this sum of $975 surely became a fixed sum and had all the earmarks of a judgment, if it was not a judgment. It is well settled that an execution will not issue on an order for the payment of alimony, either temporary or permanent; that the enforcement of such an order must be in some other way; but here the court, presumably in pursuance to their practice in Illinois, made an order finding a specific sum due, and directing an execution to recover such sum. Undoubtedly if the defendant Woodward had had any property in Illinois, the sheriff could have executed upon that property and sold it in satisfaction of that judgment.

Well, if I understand the nature and purpose of Section 1, Article IV of the Constitution of the United States, and the legislation made in pursuance thereof, to-wit, Section 905 of the Revised Statutes of the United States, being Section 1519 of the United States Compiled Statutes, Section 1266, Barnes' Fed. Code, then the same thing could be done in any other state, except that a court has no extra-territorial jurisdiction and an execution could not be levied from a court in Illinois on property of a resident in Ohio, but it must form the basis and could form the basis of a new suit, and, after judgment was obtained in that suit, an execution could be issued out of the Ohio courts to levy upon such property as could be found within the jurisdiction of the court.

We are not left to conjecture upon this case because there are numerous authorities quoted by both plaintiff in error and defendant in error in their briefs.

In the case of *Dow, Admr.*, v. *Blake*, 46 Ill. App., 329, it is held that a decree for alimony is sufficient to support a creditor's bill. The syllabus of the case is as follows:

"1. The fact that courts have the power at any time to modify their decrees in respect to the payment of alimony, does not make such decrees merely interlocutory.

"2. While judgments and decrees are subject not merely to revision, but to be entirely set aside during the term at which they are rendered, yet they are, in the sense of furnishing the foundation for execution, creditor's bills, and other suits based thereon, final and conclusive.

"3. The pendency of a petition for the modification of a decree awarding alimony does not render the decree other than final. The petition for modification is but the exercise of a right which exists in all proceedings wherein alimony has been decreed."

And in the case of *Dinet* v. *Eigenmann, Admr.*, 80 Ill., 274, after alimony had been awarded to the plaintiff and before the same was fully paid, the plaintiff died. An order of revivor was sought by the administrator, which was resisted on the ground that unpaid alimony was not a debt and that therefore the action could not be revived or execution had by the administrator. The court in that case, on page 279, uses the following language:

"It was a duty imposed by the statute upon him to contribute to the support of the divorced wife; and when the amount was ascertained and fixed, the right to the money became vested and as fully fixed as had the money been paid or the husband had given his note for the amount. * * * It was

absolutely the wife's, and went to her representatives precisely as would any other money decree against any other person.''

Now, reverting to the case at bar, the finding of the superior court of Illinois, in August, 1919, that there was so much, $975, due, is complete and definitive in its nature and is a valid and subsisting obligation. It is not only capable of being made certain, but it is certain, and the question of carrying the judgment into effect was not left to the further orders of the court, but an execution was in fact issued.

The plaintiff in error in his brief quotes from *Dow* v. *Blake, supra,* page 76, where the court said:

''A foreign judgment or judgment of another state cannot be sued on unless it is final and conclusive in the country or state where it was rendered, according to the law of that place. It should be complete and definitive in its nature and a valid and subsisting obligation, and it must be certain or capable of being made so.''

Surely, when the Illinois court, as above stated, took certain steps which made the amount of $975, at that time due, definite and certain, the proposition laid down by the court in *Dow, Admr.,* v. *Blake* was fully complied with. In the case of *Doyle* v. *West,* 60 Ohio St., 438, which was a suit to foreclose a mortgage, there was a finding of the amount due and the usual order of sale if not paid in a time certain. There was no prayer for a judgment and none was rendered, and no order for an execution for any balance that might remain after applying the proceeds. The sale was made and after applying the proceeds a balance of $102.21 remained. The original suit was brought in Ottawa

county, and seventeen years after the finding and sale a suit was brought in Lucas county to recover the balance of $102.21. The court held that an action might be maintained to recover this balance.

At the bottom of page 443 the court uses this language:

"We regard the finding of the amount due in a foreclosure proceeding as a judicial determination of the question; and where it, or any balance, after applying the proceeds of sale, remains due and unpaid, a suit may be brought on the finding to recover the amount. We find nothing in the decisions of this state that conflicts with this holding. It is not, as we shall see, a judgment with any of its incidents, but is a debt evidenced by record, and can only be discharged by payment."

Such we conceive to be the finding of the Illinois court in the instant case when it found that there was $975 due. In fact all the cases cited by the plaintiff in error recognize the distinguishing feature present in this case, which excepts it from the general rule of a decree awarding future alimony, payable in installments, without any finding of a specific amount due.

One of the leading cases upon this subject is the case of *Barber* v. *Barber*, 21 How., 582. The facts in the case are briefly as follows:

Hiram Barber and Huldah A. Barber were married in New York in 1840. Suit was brought by the wife for a divorce *a mensa et thoro*. The defendant appeared and defended. The court decreed that the parties be divorced *a mensa et thoro*, and provided that they might at any time thereafter, by joint petition, apply to have the decree modified or discharged. The court referred the cause to a mas-

ter to ascertain and report what should be allowed and paid by the defendant to Mrs. Barber for her suitable support and maintenance. A report was made by the master, to which exceptions were filed by the defendant, which exceptions were overruled and a final decree entered. The decree provided that the plaintiff should be paid by the defendant for her support and maintenance the sum of three hundred and sixty dollars per annum, and further stated that as it appeared the defendant had not given plaintiff any support during the pendency of the bill the sum of $960, ''being the alimony then due,'' should be paid forthwith and plaintiff should have execution therefor. It was further ordered that the permanent alimony allowed and to become due should be paid in quarterly installments on the first days of March, June, September and December, and in the case of its not being paid that execution might issue therefor. Subsequently the defendant removed to Wisconsin and prosecuted an action against the plaintiff for a divorce, which was granted by the Wisconsin court. Thereafter the wife brought suit in the U. S. district court of Wisconsin to recover the amount of alimony which had accrued under the New York decree, and secured a judgment for $5,936.80.

Not less than five thousand dollars of this judgment was on account of the installments of alimony which became due and payable subsequent to the entering of the decree by the New York court.

The U. S. supreme court affirmed the judgment of the district court notwithstanding the judgment was made up almost entirely of alimony payable in installments which had accrued subsequent to the decree, which decree was not a decree in gross. It

should be noted that the New York decree in the *Barber case* provided that as each subsequent installment became due an execution should be issued therefor. Having found at the time of the final decree that there was $960 alimony then due, judgment was entered for said amount and execution ordered, in this respect exactly similar to the proceeding in the case at bar.

During the rendering of the opinion of the supreme court in this case, at page 591, the following language was used:

"The parties to a cause for a divorce and for alimony are as much bound by a decree for both, which has been given by one of our state courts having jurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any state of the United States, the court having jurisdiction, will be carried into judgment in any other state, to have there the same binding force that it has in the state in which it was originally given. For such a purpose, both the equity courts of the United States and the same courts of the states have jurisdiction."

The court further says, at page 595:

"And to ask the court having jurisdiction of her suit to allow her from her husband's means, by way of alimony, a suitable maintenance and support. When that has been done, it becomes a judicial debt of record against the husband, which may be enforced by execution or attachment against his person, issuing from the court which gave the de-

cree; and when that cannot be done on account of the husband having left or fled from that jurisdiction to another, where the process of that court cannot reach him, the wife, by her next friend, may sue him wherever he may be found, or where he shall have acquired a new domicile, for the purpose of recovering the alimony due to her, or to *carry the decree into a judgment there with the same effect that it has in the state in which the decree was given.*"

Counsel for plaintiff in error relies upon the case of *Lynde* v. *Lynde,* reported in 162 N. Y., 405, and in 181 U. S., 183. In 181 U. S., at page 187, the supreme court said:

"The decree of the Court of Chancery of New Jersey, on which this suit is brought, provides, first, for the payment of $7,840 for alimony already due, and $1,000 counsel fee; second, for the payment of alimony since the date of the decree at the rate of $80 per week; and third, for the giving of a bond to secure the payment of these sums, and, on default of payment or of giving bond, for leave to apply for a writ of sequestration, or a receiver and injunction.

"The decree for the payment of $8,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision of the payment for alimony in the future was subject to the discretion of the Court of Chancery of New Jersey, which might at any time alter it, and was not a final judgment for a fixed sum."

It will be noted upon an analysis of that case that so far as the court allowed the sum of alimony that was then due, to-wit, $7,840, together with an attorney's fee of one thousand dollars, the United

States court held that sum recoverable, and only held that the installments of $80 per week thereafter, which were subject to modification and change by the New Jersey court, could not be recoverable. In other words this $8,840 was a fixed sum, and so in the present case was the sum of $975 and interest a fixed sum, and *Lynde* v. *Lynde* is an authority for the contention of the defendants in error in the instant case so far as it relates to the recovery of the $975, which was found due by the court of Cook county, Illinois.

Referring back to 83d Ohio St., the case of *Gilbert* v. *Gilbert,* this case had its various ups and down. In fact it came before the writer of this opinion once while he was on the common pleas bench of Cuyahoga county. You will find in 90th Ohio St., that this case was again before the supreme court of Ohio. It will be noted that in the 83d Ohio St. the supreme court reversed the circuit court of Cuyahoga county and remanded the case to the common pleas court for further proceedings. It will also be noted (90 Ohio St., 417), that the answer filed by Gilbert to the petition of Mrs. Gilbert, which finally reached the supreme court in 83 Ohio St., set up the proceedings in the Dakota court, and that a demurrer was filed to that answer, which demurrer was sustained, and when the case got back to the common pleas court Mrs. Gilbert filed a reply to the answer, in which reply she admitted that she had filed an answer in the suit for divorce brought in South Dakota by the defendant in error, and that she had appeared in court and contested the same; but by the reply so filed in the Ohio cause plaintiff denied the allegations in the answer of the defendant to the effect that she had

voluntarily submitted to the said court in South Dakota for its consideration (in making final decision of the rights of the parties therein upon the question of alimony) the orders and doings of the court of common pleas of Cuyahoga county, as well as all other claims that the plaintiff had or claimed to have against the defendant.

The supreme court stated in 90 Ohio St., in this case, that it "finds that by denial the reply presented an issue of fact which the plaintiff in error is entitled to have tried in the court below according to law; that if on the trial such issue shall be determined in favor of the plaintiff she will be entitled to recover in this action the amount with interest of the installments under the decree rendered by the court of common pleas of Cuyahoga county which were due and unpaid prior to the date of the decree for divorce by the court in South Dakota in the proceeding in which the plaintiff herein was a party, and in which proceeding she entered her appearance and filed her answer as aforesaid."

The case was again reversed and sent back to the common pleas court for further proceedings according to law.

Now, an analysis of this decision will show that the supreme court of Ohio is not entirely consistent, for by its holding in 90 Ohio St. it sustains the doctrine that a party who procured an order for alimony payable in installments, when no gross sum had been allowed, might make that the basis of a judgment in the Ohio courts. Well, now, if she could make that the basis of a judgment in the Ohio courts, she likewise would be able to make it the basis of an action in another state, under the full faith and credit clause in the Constitution of the

United States, already alluded to, so the ruling laid
down in the case of *Gilbert* v. *Gilbert* in the 83d
Ohio St. cannot quite be harmonized with the doc-
trine announced in the same case in the 90th Ohio
St., but, irrespective of this, we think the case at
bar comes clearly under that long line of decisions
cited by both plaintiff and defendant in their briefs,
which all unite in holding, that where there has been
a definite, specific sum found upon which execution
might issue, it may be made the basis of an action
in another state under the comity clause of the
Constitution of the United States.

We have therefore come to the conclusion that
the court of common pleas was right in overruling
the demurrer of the defendant in the court below,
and the judgment of the common pleas court will,
therefore, be affirmed.

*Judgment affirmed.*

WASHBURN, P. J., and INGERSOLL, J., concur.

Judges of the Eighth Appellate District, sitting
in place of Judges HAMILTON, CUSHING and BUCH-
WALTER of the First Appellate District.