UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011

_____


In Re: LTL MANAGEMENT LLC,
Debtor

OFFICIAL COMMITTEE OF TALC CLAIMANTS,
Appellant

v.

THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT AND JOHN AND JANE
DOES 1-1000

(District Court Civil No.: 21-bk-30589; 21-ap-03032)

Present: RESTREPO, FUENTES, and AMBRO[*] Circuit Judges,

## **ORDER**

The Clerk is directed to file the amended precedential opinion contemporaneously

with this order. The changes to the opinion are shown in blue and red text on the pages

attached as Exhibit A to this order. As the opinion has not been revised in any material

way, no party may file a petition for rehearing.

_____

[*] Judge Ambro assumed senior status on February 6, 2023.

BY THE COURT,


s/ THOMAS L. AMBRO
Circuit Judge

Dated:  March 31, 2023
JK/cc:  All Counsel of Record

<u>Exhibit A</u>

Revised Text

underlying basic and inferred facts require clear-error review, the culminating determination of whether those facts support a conclusion of good faith gets plenary review as "essentially[] a conclusion of law." *Id*.; *see also U.S. Bank Nat'l Ass'n ex. rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 138 S. Ct. 960, 966-68 (2018).* A conclusion of financial distress, like the broader good-faith inquiry of which it is a part, likewise is subject to mixed review. Whether financial distress exists depends on the underlying basic facts, such as the debtor's ability to pay its current debts, and inferred facts, such as projections of how much pending and future liabilities (like litigation) could cost it in the future. But the ultimate determination conclusion, like with good faith, is essentially a conclusion of law that gets a fresh look. *See id.*

## B. Good Faith

Chapter 11 bankruptcy petitions are "subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith." *BEPCO*, 589 F.3d at 618 (citing *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004)). Section 1112(b) provides for dismissal for "cause." A lack of good faith constitutes "cause," though it does not fall into one of the examples of cause specifically listed in the statute. *See In re SGL Carbon Corp.*, 200 F.3d 154, 159-62 (3d Cir. 1999). Because the Code's text neither sets nor bars explicitly a good-faith requirement, we have grounded it in the "equitable nature of bankruptcy" and the "purposes underlying Chapter 11." *Id.* at 161-62 ("A debtor who attempts to garner shelter under the Bankruptcy Code . . . must act in conformity with the Code's underlying principles.").

dismissal, of claims by assuming most, if not all, would go to and succeed at trial. In doing so, these projections contradict the record. And while the Bankruptcy Court questioned the continuing relevance of the past track record after *Ingham* and the breakdown of the Imerys settlement talks, this assumes too much too early. Nothing in the record suggests *Ingham*—one of 49 pre-bankruptcy trials and described even by J&J as "unique" and "not representative," App. 2692-93—was the new norm. Nor is there anything that shows all hope of a meaningful global or near-global settlement was lost after the initial Imerys offer was rebuffed. The Imerys bankruptcy remained a platform to negotiate settlement. And the progression of the multidistrict litigation on a separate track would continue to sharpen all interested parties' views of mutually beneficial settlement values.

Finally, we cannot help noting that the casualness of the calculations supporting the Court's projections engenders doubt as to whether they were factual findings at all, but instead back-of-the-envelope forecasts of hypothetical worst-case scenarios. Still, to the extent they were findings of fact, we cannot say these were inferences permissibly drawn and entitled to deference. *See Universal Mins.*, 669 F.2d at 102. Hence, they were clearly erroneous. And as we locate no other inferences or support in the record to bear the Court's assertion that the "talc liabilities" "far exceed [LTL's] capacity to satisfy [them]," we cannot accept this conclusion either.[16] App. 23 (Mot. to Dismiss Op. 23).

---

[16] Because we arrive at the same result assuming the Bankruptcy Court was correct to determine LTL was responsible to indemnify J&J for *all* talc costs it incurs, we need not opine on this conclusion. Still, we note certain

virtually all multidistrict ovarian cancer claims as well as corresponding additional claims in the Imerys bankruptcy. And as noted, we view all this against a pre-bankruptcy backdrop where Old Consumer had success settling claims or obtaining dismissal orders, and where, at trial, ovarian cancer plaintiffs never won verdicts that withstood appeal outside of *Ingham* and mesothelioma plaintiffs had odds of prevailing that were less than stellar.

From these facts—presented by J&J and LTL themselves—we can infer only that LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future. It looks correct to have implied, in a prior court filing, that there was not "*any imminent or even likely need of [it] to invoke the Funding Agreement to its maximum amount or anything close to it.*" App. 3747 (LTL's Obj. to Mots. for Cert. of Direct Appeal 22) (emphasis added). Indeed, the Funding Agreement itself recited that LTL, after the divisional merger and assumption of that Agreement, held "assets having a value at least equal to its liabilities and had financial capacity sufficient to satisfy its obligations as they become due in the ordinary course of business, *including any [t]alc [r]elated [l]iabilities.*" App. 4313 (Funding Agreement 1, ¶ E) (emphasis added). This all comports with the theme LTL proclaimed in this case from day one: it can pay current and future talc claimants in full*. See* App. 630 (Transcript of N.C. "First Day" Hearing, October 20, 2021) (LTL's counsel telling the North Carolina bankruptcy court in his opening remarks that "[LTL], New [Consumer], and J&J believe that *$2 billion exceeds* any liability [LTL] could reasonably have for talc-related claims . . . ." (emphasis added)).

accrue to the benefit of all, or nearly all, stakeholders. Thus we need not lay down a rule that no nontraditional debtor could ever satisfy the Code's good-faith requirement.

But here J&J's belief that this bankruptcy creates the best of all possible worlds for it and the talc claimants is not enough, no matter how sincerely held. Nor is the Bankruptcy Court's commendable effort to resolve a more-than-thorny problem. These cannot displace the rule that resort to Chapter 11 is appropriate only for entities facing financial distress. This safeguard ensures that claimants' pre-bankruptcy remedies—here, the chance to prove to a jury of their peers injuries claimed to be caused by a consumer product—are disrupted only when necessary.

Some may argue any divisional merger to excise the liability and stigma of a product gone bad contradicts the principles and purposes of the Bankruptcy Code. But even that is a call that awaits another day and another case. For here the debtor was in no financial distress when it sought Chapter 11 protection. To ignore a parent (and grandparent) safety net shielding all liability then foreseen would allow tunnel vision to create a legal blind spot. We will not do so.

Because it abused its discretion in denying the motions to dismiss, wWe thus reverse the Bankruptcy Court's order denying the motions to dismiss and remand this case with the instruction to dismiss LTL's Chapter 11 petition. Dismissing its case annuls the litigation stay ordered by the Court and makes moot the need to decide that issue.