NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3098

_____

In re: ALAN WOLF,
                                        Debtor

Edward Jordan,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-16-cv-05229
District Judge: The Honorable Cynthia M. Rufe

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 14, 2018

Before: SMITH, *Chief Judge*, CHAGARES, and FUENTES, *Circuit Judges*

(Opinion Filed:  June 22, 2018)

_____

OPINION*

_____

SMITH, *Chief Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Edward Jordan appeals the District Court's order affirming the Bankruptcy Court's denial of his claim against Alan Wolf's bankruptcy estate. Jordan failed to establish his claim against the estate, and we will affirm.

In 1999, Jordan paid approximately $59,000 to purchase a classic car, a restored 1953 Cadillac Eldorado. At some point, the sale fell apart, and ultimately, Jordan never received the car—or a refund.[1] Jordan eventually filed suit against Modern Classics, Inc., a licensed collector car dealership, seeking repayment of the purchase price. Modern Classics filed for bankruptcy shortly thereafter.[2] Jordan then sued Wolf, the majority owner of Modern Classics, with whom he had negotiated the purchase. Wolf then promptly filed for bankruptcy himself. Jordan submitted a proof of claim in the personal bankruptcy proceeding, alleging that Wolf was liable for the failed sale, and in the alternative, that Wolf had been unjustly enriched. The Bankruptcy Court denied Jordan's claim, holding that Jordan had contracted with Modern Classics to purchase the Eldorado rather than with Wolf personally, and that Jordan failed to prove unjust enrichment. Jordan appealed to the District Court, which affirmed the Bankruptcy Court's order. Jordan now appeals the

---

[1] Jordan and Wolf blame each other for the sale's failure, though it is not relevant for our purposes who is to blame. Wolf eventually sold the Eldorado to another customer, and Jordan agreed to accept instead a 1953 Cadillac Speedster after it had been restored to match the condition of the Eldorado. The Speedster restoration seems to have taken years, and in any event, Jordan never received the car. In fact, Jordan received only $3,000 in 2010 as part of a short-lived repayment agreement.

[2] Modern Classics' bankruptcy closed as a no-asset case, and Jordan's suit against the dealership was eventually dismissed.

District Court's order. He challenges the Bankruptcy Court's evidentiary rulings and its analysis of the merits of Jordan's claim.

## I.[3]

The Bankruptcy Court ruled on several evidentiary issues. Jordan primarily objects to the Bankruptcy Court's decision to withdraw admissions made by Wolf as a result of his failure to respond to Jordan's requests for admission. *See* Fed. R. Civ. P. 36(a)(3). The Bankruptcy Court held that the admissions did not clearly establish Jordan's case, their withdrawal would not prejudice Jordan, and it would be unfair to decide the case on the basis of the admissions. Jordan argues that the Bankruptcy Court erred by withdrawing the admissions sua sponte rather than by motion.

We agree with the District Court that any error by the Bankruptcy Court in withdrawing the admissions was harmless. The central merits question in this case is whether Jordan contracted with Modern Classics or with Wolf personally. As the District Court and Bankruptcy Court noted, the relevant admissions have no bearing on that question. They establish only that:

---

[3] The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157. The District Court had jurisdiction over the appeal under 28 U.S.C. § 158(a), and we have jurisdiction over this appeal under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. "Because the District Court in this case sat as an appellate court reviewing a final order of the Bankruptcy Court, our review of its decision is plenary." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999). We apply the same standard of review as the District Court, and review the Bankruptcy Court's legal decisions de novo and its factual determinations for clear error. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 965–66 (2018).

3. [Wolf] made the offer to sell the Eldorado to [Jordan] to induce [Jordan] to send $59,000 to [Wolf].

12. [A]fter selling the Eldorado to someone other than [Jordan], [Wolf] offered to deliver to [Jordan] [a different car].

15. [Wolf] signed the [Repayment] Agreement and sent the Agreement to [Jordan] by facsimile on August 5, 2010.

App. at 314, 316.

Those admissions establish only that Wolf negotiated and signed the agreements with Jordan. By their own terms, they do not clearly establish that Wolf did so on his own behalf rather than on behalf of Modern Classics, the dealership he owned. "[A] corporation can only act through its officers, agents, and employees." *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1196 (Pa. 2012); *see Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017) ("State law usually determines whether a person has [a claim]."). The District Court did not err in affirming the withdrawal of admissions.

Jordan also objects to a slew of other rulings, including the Bankruptcy Court's decision not to reopen discovery prior to denying Jordan's motion for summary judgment; the admission of certain testimony over Jordan's objections; and the Bankruptcy Court's credibility determinations with respect to witness testimony.

None of the objections have merit. We see no abuse of discretion in the decision not to reopen discovery. *See In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003). Jordan's motion to reopen discovery essentially mirrors his opposition to the Bankruptcy Court's decision to withdraw the admissions, and we agree with the District Court that additional discovery would not have made a difference.

4

We have reviewed the trial transcript, and conclude that the Bankruptcy Court did not err in its evidentiary rulings related to the title of the Eldorado or the undeliverable letters Wolf attempted to send to Jordan. And, as the finder of fact, the Bankruptcy Court is entitled to deference for its credibility determinations. *See In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007). Jordan makes no argument as to why those determinations should be overturned. The District Court did not err in affirming the Bankruptcy Court's evidentiary rulings.

II.

Jordan argues that the Bankruptcy Court committed clear error in finding that his contract was with Modern Classics rather than Wolf personally. Jordan argues that he believed from the start of the negotiations that he had contracted with Wolf personally because he negotiated with Wolf and made the payment check out to Wolf. Wolf also deposited the check in a personal account, and was listed as "seller" on the initial contract for the Eldorado. In rejecting Jordan's argument, the Bankruptcy Court and the District Court relied on several countervailing facts: Wolf responded to Jordan's initial inquiry about the Eldorado on Modern Classics stationary, and the contract itself stated that it was an invoice from Modern Classics. The 2010 repayment agreement pursuant to which Wolf paid Jordan $3,000 was signed by Wolf on a line above the words "Modern Classics." Finally, when Jordan first sued over the failed transactions in 2010, he sued Modern Classics rather than Wolf. Jordan only began pursuing Wolf for the claim after Modern Classics filed for bankruptcy. Considering the record as a whole, the Bankruptcy Court did

5

not clearly err in finding that Jordan contracted with Modern Classics rather than Wolf. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

## III.

Finally, Jordan argues that Wolf was unjustly enriched by retaining the purchase price of the Eldorado even though he never delivered the car. Under Pennsylvania law, Jordan had the burden of establishing, among other elements, "benefits conferred on defendant by plaintiff." *Montgomery Cty. v. MERSCORP Inc.*, 795 F.3d 372, 379 n.7 (3d Cir. 2015) (quoting *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)). The Bankruptcy Court determined, based on Wolf's testimony at trial and a lack of proof submitted by Jordan, that it was equally likely that Wolf reinvested the money into Modern Classics instead of retaining it for himself. Thus, the Bankruptcy Court concluded that Jordan failed to show by a preponderance of the evidence that Jordan conferred a benefit on Wolf rather than on Modern Classics. The District Court affirmed. On appeal, Jordan relies on the fact that Wolf deposited the payment check in a personal account rather than a business account. As the District Court noted, Wolf's decision to deposit the money in a personal account "evinces a lack of professionalism," App. at 12, but it does not by itself establish that Wolf *personally* retained the payment for his own benefit rather than the benefit of Modern Classics, as he also used the personal account to make a $3,000 payment on behalf of Modern Classics in 2010. The Bankruptcy Court did not err in concluding that Jordan failed to prove his unjust enrichment claim.

## IV.

6

Bankruptcy allows individuals and corporations to recover from difficult circumstances, and provides a fresh start to those who need it. Jordan became a creditor of Modern Classics when he did not receive the vehicle for which he bargained. When Modern Classics filed for bankruptcy, Jordan's claim should have been, but was not, brought to that bankruptcy estate. Now, Jordan seeks to assert the claim against Wolf personally. Because Jordan failed to prove that Wolf was personally liable on Jordan's contract with Modern Classics, or in the alternative that Wolf had been personally and unjustly enriched by the payment, we will affirm the judgment of the District Court.