# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3281

_____

Carlos Fernando Colores Vasquez,   *
           *
     Appellee,    *
           *   Appeal from the United States
   v.          *   District Court for the
           *   District of Minnesota.
Stephanie Jo Colores,     *
           *
     Appellant.    *

_____

Submitted: May 10, 2011
Filed: August 5, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dr. Carlos Colores Vasquez filed a petition to return his twenty-two-month-old daughter, I.R.C., to Mexico pursuant to the Hague Convention on the Civil Aspects of Child Abduction (the Convention), implemented by the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §11601 *et seq.* Stephanie Colores, Dr. Colores's estranged wife and mother of I.R.C., opposed the petition. The district court[1] entered an order granting the petition.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

Ms. Colores appeals, arguing that the district court erred in denying her motion for a continuance and in excluding the testimony of two witnesses. We affirm.

I.

A. The Hague Convention

The signatory nations of the Convention, including Mexico and the United States, sought "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 375 (8th Cir. 1995) (quoting the Convention, Preamble). Under ICARA, a petitioner whose custody rights have been violated must establish, by a preponderance of the evidence, that the child was wrongfully removed from the country of her habitual residence. 42 U.S.C. § 11603(e)(1). A court is bound to promptly return a child who was wrongfully removed unless certain "narrow exceptions" apply. § 11601(a)(4). The Article 13(b) exception, on which Ms. Colores relied, applies if the party opposing the petition establishes by clear and convincing evidence that "there is grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." § 11603(e)(2).

We have recognized two types of grave risk that are cognizable under Article 13(b): cases in which a child is sent to a zone of war, famine, or disease and those involving serious abuse or neglect. Silverman v. Silverman, 338 F.3d 886, 900 (8th Cir. 2003). The inquiry is narrow in scope:

> [it] does not include an adjudication of the underlying custody dispute, and only requires assessment of whether the child will face immediate and substantial risk of an intolerable situation if he is returned to [his home country] pending final determination of his parents' custody

dispute. It is not relevant to this Convention exception who is the better parent in the long run, or whether [the respondent-mother] had good reason to leave her home . . . and terminate her marriage to [the petitioner-father] . . . .

Nunez-Escudero, 58 F.3d at 377.

B. Factual and Procedural Background

Ms. Colores, an American citizen, and Dr. Colores married in Minnesota in the summer of 2007 and moved to Mexico. Their daughter, I.R.C., was born in December 2008. In early May 2010, Ms. Colores left Mexico with I.R.C. and traveled to South Carolina, where her mother was vacationing. The three returned to her mother's home in Minnesota in late May. Dr. Colores filed his petition for emergency ex parte relief under the Convention on August 23, 2010. The district court granted that petition two days later. United States Marshals transferred I.R.C. to Dr. Colores's custody on August 26.

Ms. Colores sought a continuance, claiming that she needed more time to obtain additional information from the United States Embassy in Mexico City and security footage from the gated community in which she and Dr. Colores had lived. Dr. Colores objected to the continuance, arguing that Ms. Colores had failed to demonstrate that the information was material to the petition. The district court denied the motion for a continuance, and the parties commenced the first of three evidentiary hearings on September 1.

The parties agreed that I.R.C. was a habitual resident of Mexico and that her removal was wrongful because Dr. Colores did not consent and I.R.C. did not have a valid passport. Ms. Colores claimed that the Article 13(b) exception applied and thus the district court was not obligated to return I.R.C. to Mexico. Over the course of the hearings, she sought to establish that Dr. Colores's anger problems and history

-3-

of abuse posed a grave risk of physical or psychological harm that satisfied the Article 13(b) exception. She testified that Dr. Colores had abused I.R.C. by shaking her head forcefully six to ten times a month, head-butting her two to three times a month, or hitting her on the back with his fist. Barbara Jo Gangl, Ms. Colores's mother, testified that she had witnessed Dr. Colores shake I.R.C.'s head forcefully and pull her hair.

### C. Excluded Testimony

Following Ms. Colores's testimony, she sought to elicit testimony from John Gangl, her stepfather. She proffered that he would corroborate her account of Dr. Colores's episodes of rage by recounting a telephone conversation in which Dr. Colores allegedly lashed out at Gangl after he complained about Dr. Colores's refusal to pick up Barbara Jo from the airport when she visited. The district court inquired whether Gangl had witnessed Dr. Colores in a rage in the presence of I.R.C. and was told that he had not. The district court concluded that the proffered testimony was not relevant and excluded it.

Ms. Colores also sought to elicit expert testimony from Dr. Jeffrey L. Edleson, Professor and Director of Research at the School of Social Work at the University of Minnesota and the Director of the Minnesota Center against Violence and Abuse. On September 7, 2010, when Ms. Colores first broached the topic of calling Dr. Edleson with the district court, he was unavailable to appear because he had been hospitalized. When questioned, counsel for Ms. Colores could not provide the court with more information why Dr. Edleson had been hospitalized or when he might be available.

As part of her offer of proof, Ms. Colores recounted Dr. Edleson's expertise in the area of domestic violence and referred to a study, funded by the National Institute of Justice, the research arm of the U.S. Department of Justice, that addressed "the risk of harm to children in the context of domestic violence against parents and children

in [Hague Convention cases]." At the time, the study was unpublished and not subject to peer review.

Dr. Colores objected to the proposed testimony, noting that the witness had not been disclosed previously and had not examined I.R.C. or interviewed either of her parents. Dr. Colores argued that the proffer consisted of a generalized summary of phenomena associated with domestic abuse and was irrelevant to the specific issues at issue in the proceedings. Dr. Colores also maintained that such testimony would not shed light on the specific claims Ms. Colores made, but would only extend the proceedings and thereby exacerbate his financial hardship. The district court excluded Dr. Edleson's testimony, concluding that it was unreliable and irrelevant.

D. The District Court's Ruling

On September 14, 2010, the district court entered an order granting Dr. Colores's petition. It did "not find credible Ms. Colores's allegations that there is a grave risk that I.R.C. would be exposed to physical or psychological harm or otherwise be placed in an intolerable situation if she were returned to Mexico." D. Ct. Order of Sept. 14, 2010, at 17. It cited findings of a pediatric neurologist who had examined I.R.C. at the district court's request and who opined, based on his examination and on I.R.C.'s normal, age-appropriate neurological development, that there was no evidence of any neurologic injury. The district court also found that Ms. Colores had never reported any injury and had been willing to leave I.R.C. with Dr. Colores for ten days when she returned to the United States to attend a funeral.

On September 15, the day after the district court entered the order, Ms. Colores moved for an emergency stay of the judgment. That motion was granted, but not before Dr. Colores departed for Mexico with I.R.C. On September 17, the district court ultimately denied Ms. Colores's motion for a stay, and Ms. Colores timely filed her notice of appeal.

II.

Ms. Colores contends that the district court erred in refusing to grant her motion for a continuance and in excluding proffered testimony from John Gangl and Dr. Edleson. She argues that we should vacate the district court's order and remand the case with instructions to allow her adequate time to collect evidence to contest the petition and to present the previously excluded testimony.

A. Motion for Continuance

We review the denial of a motion for a continuance for abuse of discretion. Beard v. Flying J, Inc., 266 F.3d 792, 802 (8th Cir. 2001).

Ms. Colores's motion for a continuance was based on her claim that she needed to gather evidence that was located in Mexico. According to Ms. Colores, the evidence consisted of witness statements and videotapes from surveillance cameras of the gated community in which she and Dr. Colores had lived, as well as a copy of a report she had allegedly filed with the U.S. Embassy documenting Dr. Colores's abuse of herself and of I.R.C.

Dr. Colores contends that Ms. Colores failed to establish that the evidence she sought was material and that the district court appropriately denied the motion in light of the prejudice Dr. Colores suffered from continued delay and the primacy placed on expediency in Convention proceedings. Given the underlying circumstances and the professed goal of expediency in Convention proceedings, we agree that the district court did not abuse its discretion in denying the motion.

B. Exclusion of Witness Testimony

"A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." Bady v. Murphy-Kjos, 628 F.3d 1000, 1002-03 (8th Cir. 2011) (citation omitted). "To warrant reversal, an error must affect a substantial right of the objecting party, and the burden of showing prejudice rests on that party." Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008) (internal quotation and citation omitted).

Ms. Colores maintains that her stepfather's testimony would have corroborated her account of Dr. Colores's rage and anger. The incident at the heart of the proffer occurred in December 2008, when Gangl and Dr. Colores argued on the telephone after Dr. Colores refused to pick up Barbara Jo from the airport when she came to visit and instead asked that she take a cab to the house. After hearing the details of the phone conversation and determining that Gangl was not physically present with I.R.C. when it occurred, the district court concluded that the proffered testimony was not relevant and excluded it.

At best, the proffered testimony repeated Ms. Colores's account of her husband's behavior on the night of the telephone call. But I.R.C. was not implicated in the particulars of the phone call, and Gangl's proffered testimony would have been cumulative of prior testimony from Ms. Colores and her mother. Accordingly, we cannot say that the district court abused its discretion in excluding this testimony.

Ms. Colores argues that the district court abused its discretion in excluding testimony from Dr. Edleson. Federal Rule of Evidence 702 governs the admission of expert testimony and requires that the district court function as a gatekeeper to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). "If scientific,

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert may testify in the form of an opinion or otherwise so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

We need not determine whether Dr. Edleson's testimony was unreliable simply because the report that would have served as its basis had not yet been published or peer-reviewed, for we conclude that the district court did not abuse its discretion in excluding the testimony as irrelevant after finding that Dr. Edleson had not interviewed either of the parties or I.R.C.[2] The district court concluded that Dr. Edleson's testimony would not have directly aided the fact-finder in sorting out whether abuse had occurred and, if so, what effect it had on I.R.C. It emphasized that there was little physical evidence of abuse or mistreatment and that the veracity of the allegations of abuse turned primarily on the credibility of the parties' testimony.

Questions of admissibility "are not to be measured by what we may have done were we the district court," but whether its evidentiary decisions constitute "a clear abuse of discretion." Dunn v. Nexgrill Indus., Inc., 636 F.3d 1049, 1057 (8th Cir. 2011). Ms. Colores has not demonstrated that excluding the testimony was so prejudicial as to require reversal. She did not contend that Dr. Edleson had concluded that Ms. Colores or I.R.C. had been abused or that I.R.C. faced a grave risk of harm

---

[2]Ms. Colores challenges this finding and contends that Dr. Edleson had conducted an interview of the parties at some point during the course of the proceedings. She nonetheless concedes that her trial counsel failed to inform the district court of this fact at the time of the proffer or thereafter. Appellant's Br. at 22 n.2. The district court is not to be faulted for failing to consider information of which it was not made aware.

if she were returned to Mexico. So far as the district court was aware, Ms. Colores did not contend that Dr. Edleson had formed any opinion as to I.R.C.

In light of these circumstances, we do not believe that the proffered testimony was "of such a critical nature that there is no reasonable assurance that the [fact-finder] would have reached the same conclusion had the evidence been admitted." Cavataio v. City of Bella Villa, 570 F.3d 1015, 1021 (8th Cir. 2009) (citation omitted). Accordingly, we conclude that the exclusion of Dr. Edleson's testimony does not warrant reversal.

III.

The judgment is affirmed.

_____